IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Christopher Lee Dunlap, | ) | C/A No. 2:15-cv-03165-MGL-MGB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | REPORT AND RECOMMENDATION |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff Christopher Lee Dunlap, through counsel, brought this action to obtain judicial

review of an unfavorable final administrative decision denying benefits on his November 17,

2011 applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") under the Social Security Act ("Act").  *See* Section 205(g) of the SSA, as amended, 42

U.S.C. Section 405(g).  This matter was referred to the Magistrate Judge for a Report and

Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States

Code, Section 636(b)(1)(B).

## Procedural History and ALJ's Findings

The Plaintiff was born on July 9, 1963, and was 48 years old on the alleged onset of

disability date, October 1, 2011.  (R. 33; 211.)  The Plaintiff filed for DIB and SSI on November

17, 2011.  (R. 203, 211.)  The Plaintiff claimed disability due to nerve damage in his arms and

legs, the inability to read, anxiety, and lower back problems.  (R. 203-12, 226.)  The Plaintiff's

claims were initially denied and denied on reconsideration.  (R. 109-10, 139-40.)  Following a

hearing, the Administrative Law Judge (ALJ) denied his claim on December 31, 2013, (R. 33-44.)

Plaintiff requested review of the ALJ's decision (R. 28), which the Appeals Council granted in April 2015 pursuant to the "error of law" basis for review. (R. 198-202.) In June 2015, the Appeals Council issued its own decision in which it adopted the ALJ's findings at steps one through four of the sequential evaluation process, including the ALJ's RFC assessment for a reduced range of light work. (R. 17.) However, the Council noted that the ALJ applied the wrong Medical-Vocational (Grid) Rules in determining Plaintiff could perform other work. (R. 17.) At the hearing level, the ALJ applied Rules 202.17 and 202.10, both of which apply to individuals with a limited education but who were literate. (R. 17.) In this case, the evidence showed that Plaintiff was illiterate. (R. 17.) The Appeals Council, applying Grid Rule 202.16 (relating to younger, illiterate individuals), found the Plaintiff was disabled as of his 50th birthday, July 8, 2013, based on his age, limited education, and illiteracy. However, the Appeals Counsel concluded that prior to his 50th birthday, the Plaintiff could perform jobs that existed in significant numbers identified by the vocational expert. (R. 17.)

In August 2015, the Appeals Council set aside its June 2015 action in order to address arguments raised by Plaintiff's counsel relating to whether Plaintiff met the requirements of Listing 12.05(C) and whether he was capable of light exertional work. (R. 1-10.) The Appeals Council concluded that Plaintiff did not manifest the necessary deficits in adaptive functioning to satisfy the Listing, and that the evidence supported a RFC for light work. (R. 5.) Other than that, the Appeals Council's decision remained unchanged, and it once again found Plaintiff disabled as of his 50th birthday. (R. 7-8.) This August 2015 decision represents the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

In making the determination that the Plaintiff is not entitled to benefits before his 50th birthday, the Commissioner adopted the following findings of the Decision of the Appeals Council. (R. 7-8.):

(1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

(2)    The claimant has not engaged in substantial gainful activity since October 1, 2011, his alleged onset date of disability.

(3)    The claimant has the following severe impairments: degenerative joint disease, reduced vision, carpel tunnel syndrome, borderline intellectual functioning, anxiety and pes planus [flat feet]; but does not have an impairment or combination of impairments which is listed in, or is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

(4)    The claimant's combination of impairments results in the following limitations on his ability to perform work-related activities: the claimant can perform light work as defined in 20 CFR 404.1567 and 416.967, except that he can occasionally climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, crawl, and climb ropes or scaffolds; frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; frequently hand and finger bilaterally; must avoid positions requiring fine visual acuity; and must avoid concentrated exposure to hazards. Additionally, he is limited to unskilled work with no interaction with the public, and is limited to work requiring little to no reading or math skills.

(5) The claimant's subjective complaints are not fully credible for the reasons contained in the body of the hearing decision.

(6)    The claimant is unable to perform past relevant work as a warehouse worker, laundry worker, or maintenance worker because the demands of these jobs exceed the Plaintiff's residual functional capacity.

(7)    Prior to July 8, 2013, the claimant was under age 50, which is considered a younger individual. As of July 8, 2013, the claimant attained the age of 50, and is considered an individual closely approaching advanced age.

(8)    The claimant has a limited education and is illiterate. The claimant's past relevant work is unskilled.

(9)    Based on the claimant's age, education, and work experience, if the claimant had the capacity to perform the full range of the light exertional level, 20 CFR 404.1569 and 416.969 and Rule 202.16, Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled for the time

period prior to July 8, 2013. Although the claimant's exertional and nonexertional limitations do not allow him to perform the full range of the light exertional level, using the above cited Rule as a framework for decision making, there are a significant number of jobs in the national economy that he could perform, including hand packer and assembler.

As of July 8, 2013, based on a change in age category, Rule 202.09 directs a finding that the claimant is disabled (20 CFR 416.920(g)).

(10)    The claimant has been disabled as defined in the Social Security Act since July 8. 2013, but not before that date.

(R. 7-8.)

## Applicable Law

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq*. "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); 42 U.S.C. § 1382c(a)(3)(A) (definition used in the SSI context).[1]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the

---

[1]"[T]he definition of disability is the same under both DIB and SSI . . . ." *Mason v. Colvin*, No. 9:12-CV-1157-TLW-BM, 2013 WL 4042188, at *2 n.2 (D.S.C. Aug. 8, 2013) (citing *Emberlin v. Astrue*, No. 06-CV-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P,

Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment

which prevents him from doing substantial gainful employment.  *See* 20 C.F.R. § 404.1520 (DIB

context); 20 C.F.R. § 416.920 (SSI context).  If an individual is found not disabled at any step,

further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R.

§ 416.920(a)(4) (SSI context); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant

work as it is customarily performed in the economy or as the claimant actually performed the

work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing her

inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5);  42 U.S.C.

§ 1382c(a)(3)(H)(i).  She must make a *prima facie* showing of disability by showing that she is

unable to return to her past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir.

1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to her past relevant work, the

burden is on the Commissioner to come forward with evidence that the plaintiff can perform

alternative work and that such work exists in the regional economy. *See Grant*, 699 F.2d at 191.

The Commissioner may carry the burden of demonstrating the existence of jobs available in the

national economy which the plaintiff can perform despite the existence of impairments which

prevent the return to past relevant work by obtaining testimony from a vocational expert ("VE").

*Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored

to determine whether the findings of the Commissioner "are supported by substantial evidence

and whether the correct law was applied."  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.

1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g); 42 U.S.C. §

1383(c)(3). Consequently, the Act precludes a *de novo* review of the evidence and requires the

court to uphold the Commissioner's decision as long as it is supported by substantial evidence.

*Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v.*

*Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion. Substantial evidence consists of more than a mere scintilla of
> evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations

omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that

there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.

*Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to

support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*,

483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

"As the commissioner has agreed that Plaintiff is disabled under the Social Security Act,

the only issue is when the Plaintiff became disabled." (Dkt. No. 13 at 27.)  The Plaintiff asserts

the ALJ erred in the following three ways:

1. The Commissioner's decision that the Plaintiff does not meet listed
   impairment 12.05C is contrary to the law and is not supported by substantial
   evidence.

2. The ALJ failed to properly evaluate claimant's credibility.

3. It was error for the ALJ to promulgate an incomplete "residual functional
   capacity" (RFC) that improperly failed to accommodate all of Plaintiff's
   limitations supported by the evidence.

(Dkt. No. 13 at 28-38.)

## Listed Impairment 12.05C

To determine whether the Plaintiff's impairments meet or equal a listed impairment, the ALJ must identify the relevant listed impairments and compare the listing criteria with the evidence of the plaintiff's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (stating that without identifying the relevant listings and comparing the plaintiff's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination"); *Beckman v. Apfel*, No. WMN-99-3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) (unpublished opinion) ("In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing."(quoting *Cook*, 783 F.2d at 1172)).

The Fourth Circuit has stated:

Listing 12.05 requires a showing of "deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22." Listing 12.05 also requires the satisfaction of one of four additional requirements identified as Requirements A–D. At issue in this case was Requirement C, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70," as well as "a physical or other mental impairment imposing an additional and significant work-related limitation of function."

*Jackson v. Astrue*, 467 F. App'x 214, 217 (4th Cir. 2012) (quoting 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.05) (internal citations omitted).

The only issue before the court as to Listing 12.05C is whether the Plaintiff's deficits in adaptive functioning initially manifested before he was age 22. The Plaintiff and Commissioner agree that the Plaintiff's IQ scores satisfy the IQ component of 12.05(C). (*See* Dkt. No. 15 at 16.) Additionally, the Appeals Council found that the Plaintiff "is unable to perform past relevant work as a warehouse worker, laundry worker, or maintenance worker because the demands of

these jobs exceed the Plaintiff's residual functional capacity." (R. 8.)  "The presence of a significant work-related limitation of function that renders the claimant unable to perform his past relevant work satisfies the 'additional and significant' requirement of Listing 12.05C." *Tyre v. Colvin*, No. 8:14-cv-03426-JDA, 2016 WL 519168, at *10 (D.S.C. Feb. 10, 2016) (quoting *Rainey v. Heckler*, 770 F.2d 408, 410–11 (4th Cir. 1985)).  Therefore, the court must now address whether the Appeals Council's decision that the Plaintiff did not have the necessary deficits in adaptive functioning to qualify under 12.05C is supported by substantial evidence.

The Commissioner argues that the Plaintiff failed to show the necessary deficits in adaptive functioning that manifested before age twenty-two and that the Appeals Council's decision was supported by substantial evidence. (Dkt. No. 15 at 15-18.)  The Appeals Council stated the following regarding 12.05C:

> The Council notes that, in order to meet the requirements of 12.05C, the claimant must have deficits in adaptive functioning.  The evidence of record shows that the claimant is capable of performing basic daily living tasks (Exhibits 2F, page 3; 4F, page 3).  The claimant reported that he could perform household chores, shop, and care for his father, who had cancer (Exhibit 3E, pages 2-4). Evidence dated during the developmental period noted that the claimant was well-adjusted, got along well with peers, accepted authority, and was able to organize and express ideas (Exhibit 1F, pages 14, 16-17). The claimant's work history reflects a longitudinal capacity for substantial gainful activity that is inconsistent with significant defects in adaptive functioning (Exhibit 6D).  The Appeals Council also notes that the evidence of record is consistent with a residual functional capacity for work at the light exertional level.

(R. 5.)  This court finds that the Appeals Council ignored substantial evidence indicating that the Plaintiff exhibited deficits in adaptive functioning prior to turning 22 years of age, improperly relied on the Plaintiff's work history, and failed to address the Plaintiff's IQ scores.

The Social Security Administration "has never adopted a standard of measurement for the term 'deficits in adaptive functioning' in the capsule definition of Listing 12.05." *Wall v. Astrue*, 561 F.3d 1048, 1073 (10th Cir. 2009) (Holloway, J., dissenting).  "Deficits in adaptive

functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson*, 467 F. App'x at 218 (4th Cir. Feb.24, 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n. 3 (2002)).

The Appeals Council ignored substantial evidence that the Plaintiff exhibited deficits in adaptive functioning prior to turning 22 years of age. The Appeals Council's finding that "[e]vidence dated during the developmental period noted that the claimant was well-adjusted, got along well with peers, accepted authority, and was able to organize and express ideas" does not capture the full picture of the Plaintiff's school records. (R. 5.)  The school records also describe the Plaintiff's "Progress in Social Skill and Overall Adjustments" as "Poor. Puts forth no effort." (R. 297.) In a referral for special school services, the Plaintiff was described as not getting along with his classmates. (R. 325.)  Throughout the Plaintiff's schooling, he was in special needs classes. (R. 297-325.)  It is uncontroverted that the Plaintiff is illiterate. (R. 7; Dkt. No. 15 at 17-18.)  The Plaintiff's illiteracy was never addressed by the Appeals Council regarding his adaptive functioning.  "Evidence of illiteracy despite a claimant's education supports a finding that the claimant's mental retardation occurred before age 22." *Richardson v. Colvin*, No. 8:12-cv-03507-JDA, 2014 WL 793069, at *16 (D.S.C. Feb. 25, 2014) (*Turner v. Bowen,* 856 F.2d 695, 699 (4th Cir.1988)).

The Appeals Council cited the Plaintiff's work history as evidence to support that 12.05C did not apply. In cases where the 12.05C criteria are met, the Commissioner, "may not rely upon previous work history to prove non-disability …: 'When a claimant for benefits satisfies the disability listings, benefits are due notwithstanding any prior efforts of the claimant to work despite the handicap.'" *Luckey v. U.S. Dep't of Health & Human Servs*., 890 F.2d 666, 669 (4th

Cir. 1989) (quoting *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987)); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (stating that when a claimant satisfies a listing by meeting all its specified medical criteria, she presumably qualifies for benefits); *Ambers v. Heckler*, 736 F.2d 1467, 1469–70 (11th Cir. 1984) (finding that a mentally retarded claimant who was gainfully employed in the past is disabled upon the cessation of employment). As the District Court in Kansas explained:

> [The] DSM-IV and Listing 12.05(C) assume many, if not most, mildly mentally retarded individuals will be able to work. However, they recognize that some mildly mentally retarded individuals may be unable to work where they have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C). This listing implies that such an individual will be able to work unless he has, or until he develops, a severe physical or additional mental impairment. Therefore, the fact that plaintiff has a history of continuous employment in the past is irrelevant to whether he has subsequently become disabled due to the development of additional severe impairments.

*Muntzert v. Astrue*, 502 F. Supp. 2d 1148, 1158 (D. Kan. 2007). In light of the other errors in the Appeals Council's findings regarding the Plaintiff's deficits in adaptive functioning, the reliance on the Plaintiff's prior work history is significant.

The Appeals Council did not address the Plaintiff's IQ scores at all in determining that there were not deficits in adaptive functioning before the Plaintiff turned 22. The Commissioner concedes that the Plaintiff meets the IQ requirement of 12.05C. (Dkt. No. 15 at 16.) "[I]n the absence of any evidence of a change in a claimant's intelligence functioning, it **must** be assumed that the claimant's IQ had remained relatively constant." *Luckey*, 890 F.2d at 668 (citing *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir.1985)) (emphasis added). There is no evidence in the record that the Plaintiff's IQ ever changed. To contrary, the Plaintiff's school records reflect that the Plaintiff had significant cognitive disability such as illiteracy and low test scores throughout his adolescence.

This court finds that substantial evidence does not support the Appeals Council's finding that Plaintiff did not meet Listing 12.05C and recommends that the Decision of the Appeals Council be reversed. In light of this court's recommendation that the Decision erred at Step three of the sequential process, this court does not address the Plaintiff's additional assignments of error.

## The Court's Action

The Plaintiff seeks to have this court order the Commissioner to issue a finding of disability as of October 1, 2011. (Dkt. No. 13 at 38.)  The Appeals Council found that the Plaintiff "was insured for a period of disability and disability benefits under Title II of the Social Security Act through December 31, 2012." (R. 6.) However, the Appeals Council explicitly did not find whether the Plaintiff met the "income and resources and other eligibility requirements" for SSI. (R. 9.)  Therefore, this court recommends that the Plaintiff's case be remanded for the Commissioner for a new hearing consistent with this Report & Recommendation.

## Recommendation

It is therefore **RECOMMENDED**, for the foregoing reasons, that the Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **REMANDED** for a new hearing consistent with this Report & Recommendation.

IT IS SO RECOMMENDED.

January 17, 2017

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE